UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIRAL DRM LLC, et al.,

        Plaintiffs,

    v.

ANA NAVARRO, et al.,

        Defendants.

Case No. 24-cv-06511-SI

**ORDER AUTHORIZING ALTERNATIVE SERVICE BY E-MAIL AND WEBSITE POSTING UNDER RULE 4(F)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Re: Dkt. No. 33

Plaintiffs move ex parte for an order authorizing alternative service of process on defendants Ana Navarro and El Heraldo de Mexico. Dkt. No. 33. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for resolution without oral argument and VACATES the hearing set for April 10, 2026. For the reasons set forth below, the Court GRANTS IN PART plaintiffs' motion and authorizes alternative service by email and website posting.

**BACKGROUND**

Plaintiffs Viral DRM LLC, Michael Brandon Clement, Ronald Brian Emfinger, Nicholas Ryan Gorman, Aaron James Jayjack, Frederick Arthur McKinney, and Jonathan Petramala brought an action against Ana Navarro and El Heraldo de Mexico ("El Heraldo") for violations of the Copyright Act, 17 U.S.C. § 106, and the Integrity of Copyright Management Information Act, 17 U.S.C. § 1202. Dkt. No. 1 at 1-2; Dkt. No. 16 at 2 ("FAC"). Now pending before the Court is

plaintiffs' motion for an order authorizing alternative service on defendants via email, website, and WhatsApp. Dkt. No. 33 at 3-7, 10 ("Mot."). Plaintiffs allege that defendants reside in Mexico. *Id.* at 2.

Viral DRM is a syndicator of extreme weather videographic content. FAC ¶ 14. Plaintiffs allege that defendants copied plaintiffs' copyrighted videos from YouTube. *Id.* ¶ 34. Defendants would then remove the copyright management information and re-upload the copied videos to YouTube. *Id.* ¶¶ 35, 44. Defendants were then able to able to earn "significant revenue" from the display of the stolen content through YouTube's video monetization program. *Id.* ¶¶ 41-42. Plaintiffs submitted multiple copyright removal requests through the YouTube platform. Dkt. No. 16-3. Plaintiffs allege that defendant Ana Navarro submitted "counter notification[s]" to YouTube or requests for YouTube to reinstate the alleged offending media. *See id.*; *see also* FAC ¶ 33.

Plaintiffs filed this suit on September 16, 2024. Dkt. No. 1. They filed a first amended complaint on March 19, 2025. FAC. Plaintiffs sent the amended complaint to a translator on March 25, 2025 to comply with the Hague Convention. Dkt. No. 35 ¶ 3. On April 24, 2025, plaintiffs sent translated Hague Convention Service Documents to Mexican Customs. Mot. at 9. On May 23, 2025, Customs released plaintiffs' service documents to the Mexican Ministry of Foreign Affairs. *Id.* On June 13, 2025, the Ministry sent a response back to plaintiffs, stating there were deficiencies in the "translations of the documents and the number of copies." *Id.* Plaintiffs received the letter on July 29, 2025, and submitted corrections on August 19, 2025. *Id.* at 9-10. They submitted five cases as part of this submission. Dkt. No. 33-1 at 3 n.1. On January 9, 2026, the Mexican Ministry of Foreign Affairs sent another letter to plaintiffs saying that service was not completed because plaintiffs failed to submit a proper signature with their documents. Dkt. No. 33-2. The letter only mentions one case number, not the case number of this action. *See* Dkt. No. 33-1 at 3 n.1.[1] Plaintiffs have not yet received a letter from the Mexican Ministry of Foreign Affairs regarding this case. *See id.* Plaintiffs claim that neither of their attempts at serving defendants were insufficient and the

---

[1] There seems to be a typo in Plaintiffs' counsel's declaration. Plaintiffs say they sent "five cases" and only received "five letters" back. Dkt. No. 33-1 at 3 n.1. Because plaintiffs only attached one letter, Dkt. No. 33-2, it seems they meant to say they only received one letter back from the Mexican Ministry of Foreign Affairs.

United States District Court
Northern District of California

Mexican Ministry of Foreign Affairs is incorrect.  Mot. at 10.

Plaintiffs now move ex parte, requesting the Court authorize alternative service under Fed. R. Civ. P. 4(f) via email, website posting, and "WhatsApp to act as an additional backup to email service." *Id.* at 3-7, 10.

## LEGAL STANDARDS

"Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014).  A federal court has jurisdiction over a defendant only if the defendant has been properly served. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Federal Rule of Civil Procedure 4(f) provides that an individual not within any judicial district of the United States may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention …
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: … or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"The Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and opportunity to respond." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

## DISCUSSION

### I.    Appropriateness of Ex Parte Motion

"Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts." *Blixseth*, 742 F.3d at 1219.  The Court finds that it is appropriate for plaintiffs to move ex parte because requiring plaintiffs to serve defendants before requesting authorization for

alternative service would be paradoxical.

## II.     Alternative Service Under Rule 4(f)(3)

Plaintiffs request that the Court authorize alternative service by email and website posting under Federal Rule of Civil Procedure 4(f)(3).  Mot. at 3-7, 10.  To determine whether the Court should allow alternative service by email or website posting, the Court must determine that (1) service by email or website posting is not barred by an international agreement and (2) the benefits of alternative service by email or website posting outweigh the limitations in this particular case. *Rio Props.*, 284 F.3d at 1014, 1019.

Plaintiffs argue the Court should authorize alternative service by email and website posting pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure.  Mot. at 3-7, 10.  First, they argue that alternative service by email and posting on plaintiffs' counsel's website "will satisfy due process by apprising [defendants] of the action" because defendants' "main form of electronic contact" is email.  *Id.* at 5.  Second, plaintiffs argue that alternative service through email to Mexican defendants and posting the complaint on a website is not prohibited by international agreement.  *Id.* at 7-9.  Further, plaintiffs request authorization for alternative service because their attempts at service through the Hague Convention have been ineffective due to "impermissible" delays by the Mexican Ministry of Foreign Affairs.  *Id.* at 15.

### A.     International Agreement

The Ninth Circuit has stated that Rule 4(f) provides three independent and permissible grounds for serving foreign defendants.  *Rio Props.*, 284 F.3d at 1015.  "Rule 4(f)(3) is merely one means among several which enables service of process on an international defendant."  *Id.*  Rule 4(f) should not be read to create a hierarchy where Rule 4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders," is seen as either a last resort or extraordinary relief.  *Id.*

"Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business

<div style="margin-left">United States District Court<br>Northern District of California</div>

entity in the manner prescribed by Rule 4(f) for individuals" where service is "(1) directed by the court; and (2) not prohibited by international agreement." *Id.* "[A]s long as court-directed and not prohibited by international agreement, service of process offered under Rule (4)(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.* at 1014.

Although Mexico is a signatory to the Hague Convention,[2] Mexico has "formally objected to service under Article 10 of the Hague Service Convention, and does not permit service via postal channels." U.S. Dep't of State– Bureau of Consular Affs., *Judicial Assistance Country Information: Mexico*, Travel.State.Gov (Oct. 19, 2017) https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html (last visited Apr. 7, 2026). "However, numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011). This remains true where countries, like Mexico, have formally objected to alternative forms of service allowed under Article 10 of the Hague Convention. *See, e.g., Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, No. 20-CV-03210-TSH, 2020 WL 8614189, at *3 (N.D. Cal. Sept. 25, 2020) (finding that service to Mexican defendants via email and U.S.-based counsel is permitted, despite Mexico objecting to Article 10 of the Hague Convention); *but see Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 963 (N.D. Cal. 2024) (not permitting alternative service by email to Chinese defendants because "service must take place through the authorized methods delineated in the [Hague] Convention, as agreed upon by the signatories."); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020) (not permitting alternative service by email to Chinese defendants because email "is not one of the Hague Service Convention's approved methods of service.").

Plaintiffs here have attempted service on defendants through the Hague Convention, although they were not required to do so. *See Rio Props.*, 284 F.3d at 1014-15; *see also Gen. Star*

---

[2] The Hague Convention is a multi-state treaty formed "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time, [and] desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure…." Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, HCCH.

United States District Court
Northern District of California

*Indem. Co.*, 2020 WL 8614189, at *5.  Although Mexico has objected to alternative service under Article 10 of the Hague Convention, the Court finds that alternative service by email and website posting is permitted by Rule 4(f)(3) and is not barred by international agreement.  *See Gen. Star Indem. Co.*, 2020 WL 8614189, at *3; *see also Viral DRM LLC v. Jardin*, No. 24-cv-06854-BLF, 2024 WL 4894854, at *2 (N.D. Cal. Nov. 25, 2024) (authorizing service by email and web posting on defendants in France, where not generally prohibited by international agreement nor the Hague Convention).

### B.        Reasonableness of Alternative Service

Even where the proposed alternative service methods are facially permitted, the service of process must still be "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Rio Props.*, 284 F.3d at 1016 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

In *Rio Properties* the Ninth Circuit explained, "we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require service of process under Rule 4(f)(3)."  *Id.*  "[T]rial courts have authorized a wide variety of alternative methods of service including … most recently, email."  *Id.* (citations omitted).  The Ninth Circuit found based on the facts in that case that service of process by email was reasonably calculated to apprise the defendant of the pendency of the action and afford it an opportunity to respond.  *Id.* at 1017.  The Ninth Circuit reasoned that the defendant "structured its business such that it could be contacted *only* via its email address."  *Id.* at 1018.  Since the Ninth Circuit decided *Rio Properties* in 2002, there has been a dramatic increase in email usage as a form of professional communication.

This Court is tasked with balancing the limitations of alternative service against the benefits to determine whether alternative service is reasonable based on the circumstances.  *See id.* at 1016. Plaintiffs have demonstrated that service via email and website posting will reasonably apprise defendants of the pending actions.  Defendants operate a YouTube channel and have been responsive to YouTube's removal of their videos.  *See* Dkt. No. 16-3.  Further, plaintiffs state that

United States District Court
Northern District of California

6

United States District Court
Northern District of California

in order to have a YouTube account, defendants must "maintain e-mail addresses in order to communicate with Google, receive notice of DMCA takedowns, submit counternotices, receive payment advices, and communicate with YouTube concerning their YouTube channels." Dkt. No. 33-1 ¶ 4. In this case, defendants have put the proposed email address in their signature line when responding to plaintiffs' copyright removal requests. *See* Dkt. No. 16-3. Plaintiffs have also emailed the prospective email addresses and have not received any bounce-backs, meaning that the email addresses are likely valid. *Id.* ¶ 13. The Court finds El Heraldo structured its business in a manner that it could best be contacted through email. The Court also finds that alternative service by email and website posting comports with due process because it will give defendants actual notice and an opportunity to respond. Further, because it has been nearly eight months since plaintiffs' submission of corrected materials in August 2025 to the Mexican Ministry of Foreign Affairs and plaintiffs have not yet received a response as to this case, service via the Hague Convention channels seems to be ineffective. *See* Mot. at 10; Dkt. No. 33-1 ¶ 9 & n.1, Ex. 1. Therefore, the Court finds that the benefits of alternative service by email and website posting outweigh the limitations, that service by email and website posting comports with due process, and that service by email and website posting is reasonable. Plaintiffs may email their summons and complaint and a link to their website to ana.navarro@elheraldodemexico.com.[3]

**CONCLUSION**

Plaintiffs' motion to authorize alternative service through email and website posting is **GRANTED**. Plaintiffs' motion to authorize alternative service through WhatsApp message is

---

[3] Plaintiffs also briefly argue that they should be permitted to serve Defendants via WhatsApp as a backup. Mot. at 10. The Court finds that Plaintiffs' additional proposed service via WhatsApp does not comport with due process. Plaintiffs state that defendants' phone numbers "*may* be associated with WhatsApp." Dkt. No. 33-1 ¶ 14 (emphasis added). Plaintiffs have not presented evidence showing that defendants have a WhatsApp account associated with the phone number listed in the copyright counternotices. "At best, Plaintiff is speculating that [d]efendants have a WhatsApp account, but mere speculation is not enough to prove [d]efendants can be 'likely' reached via this means." *See Jardin*, 2024 WL 4894854, at *2 (citing *Rio Props.*, 284 F.3d at 1016-17). Without evidence that notice via WhatsApp comports with due process, the Court denies without prejudice plaintiffs' request to use WhatsApp as a backup to email service.

**DENIED without prejudice**.  The Court sets a further case management conference for **June 12, 2026, at 3:00 p.m.** over Zoom videoconference.  A case management statement (jointly filed, if defendants have appeared by this point) is due **June 5, 2026.**

     **IT IS SO ORDERED**.

Dated:  April 7, 2026

_____
SUSAN ILLSTON
United States District Judge