UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| VIRAL DRM LLC, et al.,<br>Plaintiffs,<br>v.<br>ANA NAVARRO, et al.,<br>Defendants. | Case No. 24-cv-06511-SI<br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br>Re: Dkt. No. 44 |

On September 25, 2026, the Court held a hearing on plaintiffs' motion for default judgment. Matthew L. Rollin appeared for plaintiffs. No one appeared for defendants. For the reasons set forth below, the Court GRANTS IN PART plaintiffs' motion for default judgment.

## BACKGROUND

Plaintiffs Viral DRM LLC, Michael Brandon Clement, Ronald Brian Emfinger, Nicholas Ryan Gorman, Aaron James Jayjack, Frederick Arthur McKinney, and Jonathan Petramala brought an action against defendants Ana Navarro and El Heraldo de Mexico—who are located in Mexico—for violations of the Copyright Act, 17 U.S.C. § 106 (Count I); and the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (Counts II and III). Dkt. No. 1 at 1–2; Dkt. No. 16 at 2 ("FAC").

Viral DRM is a syndicator of extreme weather videographic content. FAC ¶ 14. Plaintiffs allege that defendants copied plaintiffs' copyrighted videos from YouTube. *Id.* ¶ 34. Defendants would then remove the copyright management information and re-upload the copied videos to their own YouTube channel. *Id.* ¶¶ 35, 44. Defendants were then able to able to earn "significant revenue" from the display of the stolen content through YouTube's video monetization program. *Id.* ¶¶ 41–42. Plaintiffs submitted multiple copyright removal requests through the YouTube

platform. Dkt. No. 16-3. Plaintiffs allege that defendant Ana Navarro then submitted "counter notification[s]" to YouTube or requests for YouTube to reinstate the alleged offending media. *See id.*; *see also* FAC ¶ 33. There are eight copyrighted works at issue in this case. *See* FAC, Ex. 1.

Plaintiffs filed suit on September 16, 2024. Dkt. No. 1. They filed a first amended complaint on March 19, 2025. Dkt. No. 16. Plaintiffs then encountered numerous difficulties serving defendants in Mexico. On April 7, 2026, the Court issued an Order authorizing alternative service by e-mail and website posting under Rule 4(f)(3) of the Federal Rules of Civil Procedure. Dkt. No. 37. Plaintiffs then filed a certificate of service showing that on April 9, 2026, defendants were served with the summons and first amended complaint by alternative service in English and in Spanish via the e-mail addresses approved by the Court and with a link to www.sriplaw.com/notice, where documents associated with this matter were posted. *See* Dkt. No. 40-1 (Rollin Decl.) & Ex. A. Defendants have not appeared or responded to the complaint or to the first amended complaint.

On May 14, 2026, plaintiffs obtained entry of default from the Clerk's Office against defendants. Dkt. No. 41.

On June 24, 2026, plaintiffs filed a notice of motion and motion for entry of default judgment against defendants. Dkt. No. 44. Plaintiffs filed a certificate of service showing that on June 26, 2026, the motion for default judgment was e-mailed to defendants at the email address approved by the Court and that documents were mailed to defendant Ana Navarro via FedEx. Dkt. No. 45. Defendants never responded to the motion. This Court heard the matter on September 25, 2026, and defendants did not appear. Dkt. No. 52. At the hearing, the Court requested further information as to whether the motion for default judgment was confirmed as delivered by FedEx. Following the hearing, plaintiffs provided a certificate of service confirming that the motion was delivered by FedEx at defendant Ana Navarro's address in Mexico. Dkt. No. 51, Ex. 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Default judgment

does not flow automatically from the Clerk's entry of default but is a matter reserved to the district court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). In the Ninth Circuit, courts are guided by the eponymously named *Eitel* factors in determining whether entry of default judgment is appropriate. "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the well-pleaded allegations pertaining to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## DISCUSSION

### I. Jurisdiction

This Court has federal question jurisdiction over the subject matter of this case under 28 U.S.C. Sections 1331 and 1338(a). This Court has personal jurisdiction over defendants, who submitted to the jurisdiction of this Court by submitting a counter notification consenting to the jurisdiction of this district under the Digital Millennium Copyright Act, 17 U.S.C. § 512. *See* Dkt. No. 1-3. Venue is proper in this District under 28 U.S.C. § 1391(c)(3).

### II. Standing

#### A. Introduction

There are seven plaintiffs in this case: VIRAL DRM LLC and six individuals. *See* FAC at 1. Plaintiffs bring various claims for copyright infringement and for the removal and falsification of copyright management information ("CMI"). *Id.* at 10–12. The works at issue are videos of extreme weather events, which defendants downloaded from YouTube and re-uploaded on defendants' YouTube channel, sometimes with plaintiffs' watermarks removed and/or with defendants' watermarks added.

Viral DRM was the sole plaintiff in the original complaint. *See* Dkt. No. 1 at 1. The complaint was later amended to add the individual plaintiffs. *See* FAC at 1. Viral DRM's claims, if any, are not discussed in plaintiffs' memorandum of points and authorities in support of this motion. Plaintiff Gorman brings one claim of copyright infringement and two claims of falsification of CMI. Plaintiff Emfinger brings one claim of copyright infringement. Plaintiff Jayjack brings one claim of copyright infringement and two claims of falsification of CMI. Plaintiff McKinney brings one claim of copyright infringement. Plaintiff Clement brings three claims of copyright infringement, two claims of CMI removal, and two claims of falsification of CMI. Plaintiffs Clement and Petramala jointly bring one claim of copyright infringement, one claim of CMI removal, and one claim of CMI falsification.

**B. Copyright Infringement and CMI Standing**

The Copyright Act establishes that only the "legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The Digital Millenium Copyright Act describes who has standing to bring a claim for the removal or falsification of copyright management information. 17 U.S.C. § 1203(a) provides that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation."

Viral DRM has offered no evidence that it is a legal or beneficial owner of any of the exclusive copyrights in this case. Furthermore, Viral DRM is not listed on any of the copyright registration certificates attached as exhibits to the FAC, and the works at issue are registered to the individual plaintiffs in this case, or to Global Weather Productions LLC—a non-party. *See* Dkt. No. 16-2. Accordingly, Viral DRM lacks standing to bring a copyright infringement claim under Section 501(b) and the Court declines to enter default judgment as to Viral DRM's copyright infringement claims.

The FAC also contains no registration certificate for plaintiff Gorman's work titled: "Lincoln Nebraska Tornado Crossing I-80." And although Gorman's declaration says that the registration

certificate was attached to the complaint as Exhibit 2, *see* Dkt. No. 44-4 ¶ 3, no registration certificate for the work cited was attached to the original or the first amended complaint. Without proof of copyright registration, plaintiff Nicholas Gorman lacks standing to bring his copyright infringement and CMI claims for the work in which he claims ownership.

Finally, according to the registration certificates attached to the FAC as Exhibit 2, non-party Global Weather Productions LLC holds the copyright for the works titled: "01-09-24 Marianna, Florida – First Light Tornado Damage" and "08-30-2023 Hurricane Idalia – Crystal River, Steinhatchie, Tampa, and St. Petersburg, Florida YT." *See* Dkt. No. 16-2. Therefore, plaintiffs Michael Brandon Clement and Jonathan Petramala lack standing to bring copyright infringement and CMI claims for those two works.

Accordingly, the Court declines to enter default judgment on the copyright infringement claims for the works titled: "Lincoln Nebraska Tornado Crossing I-80;" "01-09-24 Marianna, Florida – First Light Tornado Damage;" and "08-30-2023 Hurricane Idalia – Crystal River, Steinhatchie, Tampa, and St. Petersburg, Florida YT."

## III. Liability

As to the remaining five works, the *Eitel* factors support entry of default judgment in favor of plaintiffs. *See Eitel*, 782 F.2d at 1471–72. Plaintiffs will be prejudiced if judgment is not entered because they will be denied the right to adjudicate their claims due to defendants' failure to appear. Plaintiffs have adequately pleaded violations of 17 U.S.C. §§ 501, 1202(a) & 1202(b). Most of the damages sought are statutory and up to the Court's discretion, so default judgment is appropriate. *See G & G Closed Cir. Events, LLC v. Zapata*, No. 18-CV-01103, 2019 WL 3363793, at *2 (N.D. Cal. Apr. 30, 2019), *report and recommendation adopted as modified*, 2019 WL 3891219 (N.D. Cal. Aug. 19, 2019). Defendants have not responded and there is no indication in the record that the material facts are disputed. Nor is there any indication that defendants' failure to respond was due to excusable neglect, as defendants were served in accordance with the Court's order authorizing service by e-mail and website posting. *See* Dkt. No. 37. Although there is a strong policy favoring decision on the merits, it is outweighed here by the other factors and the fact that decision on the

United States District Court
Northern District of California

United States District Court
Northern District of California

merits is not possible where defendants have failed to appear. Default judgment is therefore appropriate.

## IV. Remedies

In assessing remedies, the Court takes the well pleaded allegations of the FAC as true, except as to the amount of damages. *TeleVideo Sys.*, 826 F.2d at 917–18; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### A. Copyright Infringement Damages

The Copyright Act provides for either actual or statutory damages. *See* 17 U.S.C. § 504. Excluding those claims for which they lack standing, plaintiffs seek a total of $272,500 in actual and statutory damages for copyright infringement.

#### 1. Actual Damages (Plaintiff Emfinger)

Plaintiff Emfinger seeks $25,000 in actual damages for his claim of copyright infringement for the work titled "06-15-2023-Perryton-TX-Major tornado and damage tornado drone plus residents begin cleanup" — Copyright Registration Number: PA 2-495-765. The Copyright Act provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In *Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002), the Ninth Circuit held that the market value at the time of infringement is determined by answering the hypothetical query concerning "what a willing buyer would have been reasonably required to pay to a willing seller" for the infringed work. *Mackie*, 296 F.3d at 917. The Ninth Circuit has since noted that "[h]ypothetical-license damages assume rather than require the existence of a willing seller and buyer." *Oracle Corp v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014).

Emfinger's claim for actual damages is based on the typical range for a 30-day license to use this work: approximately $2,500. Dkt. No. 44-3 ¶ 12. He then multiplies the $2,500 monthly

license fee by fifteen months (the approximate length of time defendants used the work), for a total of $37,500. *Id.* ¶ 15. However, he limits his actual damages request to $25,000. *Id.*

One issue with Emfinger's request is that his typical 30-day license includes the following language: "Time-Limited First Use Window: Licensee must first broadcast or otherwise use the Content within thirty (30) days of download or delivery. Once properly incorporated into an authorized broadcast during that thirty (30) day window, Licensee shall have the perpetual, non-exclusive right to exhibit the Content solely as part of the specific episode in which it was originally incorporated . . . ." *Id.* ¶ 13. Applying the Ninth Circuit's test of "what a willing buyer would have been reasonably required to pay to a willing seller," *Mackie*, 296 F.3d at 917, the Court finds that Emfinger's typical 30-day license at $2,500, with its included perpetual license, would have covered defendants' infringement of the copyright. Emfinger argues that "because [d]efendants did not license the content through the proper channels and did not 'properly incorporate' the content into an authorized broadcast, the perpetual license offered does not apply," and therefore argues that a new license would have been required every thirty days. Dkt. No. 44-3 ¶ 13 n.1. The Court does not agree with this argument, as the inquiry here is about the hypothetical market value of the work, and the alleged infringement only occurred in one of defendants' videos—so the standard 30-day license offered by Emfinger would have encompassed defendants' use of the work. *See* FAC, Ex. 1; Dkt. No. 44-8.

For the foregoing reasons, the Court awards $2,500 in actual damages to Ronald Brian Emfinger.

**2. Statutory Damages**

The Copyright Act provides statutory damages of between $750 and $30,000 for infringements of a copyrighted work, or up to $150,000 for willful infringement. 17 U.S.C. § 504(c). Under this statute, the Court has broad discretion to determine the amount of statutory damages. *See Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). When awarding statutory damages under the Copyright Act, courts consider restitution of profit, reparation of injury, and deterrence of future infringement. *See F.W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228,

233 (1952); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336–37 (9th Cir. 1990) (affirming award of maximum allowable statutory damages under the Copyright Act where plaintiff may have suffered only nominal damages, in part because of deterrent effect). Courts in this district have also considered whether the damages sought bear a "plausible relationship" to the plaintiff's actual damages. *See Adobe Sys. Inc. v. Tilley*, No. C 09-1085, 2010 WL 309249, at *5 (N.D. Cal. Jan. 9, 2010) (collecting cases). When default is entered on a complaint that pleaded willfulness, allegations of willful copyright infringement are deemed true. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 538 F.3d 696, 702 (9th Cir. 2008).

**a. Willfulness**

Plaintiffs argue they are entitled to enhanced statutory damages because they pleaded willful copyright infringement in the FAC and that this allegation of willfulness is deemed true by the entry of default. *See* Dkt. No. 44 at 15–17. Whether plaintiffs have pleaded willfulness in the FAC is not immediately apparent. The word "willful" or "willfulness" does not appear in the FAC. *See* Dkt. No. 16. Count I of the FAC alleges that defendants "copied, displayed, and distributed the Works at issue" and "profited from the monetization of [p]laintiffs' copyrighted content." These allegations do not speak to whether defendants acted willfully. In addition, there is no mention in Count I of whether defendants acted knowingly or with intent to infringe plaintiffs' copyrights. *See id.* Because the FAC does not adequately plead willfulness, the Court does not take as true the arguments regarding willfulness that plaintiffs now make in their motion for default judgment. As such, plaintiffs are only entitled to the standard statutory damages between $750 and $30,000 under 17 U.S.C. § 504(c)(1) but are not entitled to enhancements for willful infringement.

**b. Plaintiff Jayjack**

Plaintiff Jayjack requests $22,500 in statutory damages for his claim of copyright infringement for the work titled "MAJOR Hurricane Idalia Makes Landfall Near Perry, Florida Shredding Trees and Building" — Copyright Registration Number: PA 2-447-682. Dkt. No. 44-5 ¶¶ 3, 14. This is based on his typical fee of $1,500 for a 30-day license. *Id.* ¶ 12. He then requests

a "3x multiplier for deterrence, and a 5x multiplier for a willfulness enhancement," which amounts to a total of $22,500. *Id.* ¶ 14. Given the foregoing discussion, the Court finds a willfulness enhancement inappropriate but will award a modest statutory damages multiplier for deterrence. The Court finds it appropriate to award $3,000 in statutory damages for this claim.

**c. Plaintiff McKinney**

Plaintiff McKinney requests $45,000 in statutory damages for his claim of copyright infringement for the work titled "The Hawley, Texas Tornado Rescue" — Copyright Registration Number: PA 2-479-373. Dkt. No. 44-6 ¶ 15. This is calculated by taking McKinney's typical 30-day license fee of $1,500 and multiplying it by six, based on his declaration that defendants used the video for at least six months, for a total of $9,000. *Id.* ¶¶ 12, 15. As stated above, the Court will not apply an enhancement for willfulness but finds it appropriate to award $9,000 in statutory damages for this claim.

**d. Plaintiff Clement**

As to plaintiff Clement, the Court will only analyze damages for the works for which Clement has standing to sue: "11-19-22 New York Lake Effect Snow" — Copyright Registration Number: PA 2-401-314; and "11-18-22 Lackawanna, NY-Firefighters shoveling to save patient, cars stuck, interstate closed." — Copyright Registration Number: PA 2-397-322. Clement is requesting $90,000 for each of these two works. Dkt. No. 44-2 ¶ 24. How Clement reached these figures is unclear. He states that he calculated the damages based on his typical 30-day license fee of $2,500 multiplied by twenty-two months, based on an estimate of how long defendants used the video. *Id.* This should equal $55,000, though his chart erroneously lists this figure as $99,000.[1] *See id.* However, in the preceding paragraph, Clement states that the fee per work would have been $30,000, and he requests a 3x multiplier for willfulness. *See id.* ¶ 23. Clement's declaration also inserts a chart that Clement says "is an example of the licensing terms and total damages

[1] Clement's chart calculates this figure as: "$99,000 (22 x$2,500)." *See* Dkt. No. 44-2 ¶ 24.

requested[.]" *Id.* The chart, however, is redacted, and does not contain any licensing fee figures. Given the litany of errors in Clement's declaration and the lack of supporting documentation, the Court declines to accept Clement's calculations as accurate award and further declines to award the statutory maximum. The Court finds it appropriate to award $10,000 in statutory damages per work, giving Michael Brandon Clement a total of $20,000 in statutory damages.

**B. DMCA Damages**

The Digital Millenium Copyright Act gives plaintiffs the option of recovering either actual or statutory damages for the removal or alteration of copyright management information. *See* 17 U.S.C. §§ 1202(b), 1203(c). For such violations, "a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(b).

Disregarding the claims for which plaintiffs lack standing, plaintiff Clement requests a total of $100,000, consisting of $50,000 in statutory damages for each of the two remaining works. *See* Dkt. No. 44-2 ¶ 27. Though the basis for this figure is not clearly laid out in Clement's declaration, the Court infers that this amount was calculated by taking the statutory maximum of $25,000 and multiplying it by two violations per work (one for the removal of the watermark Clement had placed on the videos and one for the addition of defendants' watermark to the videos). *See id.* ¶¶ 27–30. Clement requests the maximum statutory damages because he believes defendants acted willfully in "taking [his] videos, removing any traces of [his] copyright management information and then posting the content . . . as [defendants'] own." *Id.* ¶ 30. However, CMI claims are not subject to the same statutory enhancement for willfulness as copyright infringement. Taking everything into account, Clement's request for the maximum amount of statutory damages seems exorbitant. The Court awards plaintiff Clement $2,500 per violation of CMI for a total of $10,000.

Plaintiff Jayjack requests $50,000 in statutory damages for the removal and alteration of copyright management information on his one work at issue, attaching screenshots of two instances in which defendants added their watermark to his video. Dkt. No. 44-5 ¶¶ 18–19; Rollin Decl., Ex.

1.[2] He seeks the maximum award of $25,000, multiplied by two for the two instances. Dkt. No. 44-5 ¶¶ 18–19. For the same reasons as above with regard to Clement's CMI claims, the Court awards Jayjack $2,500 per CMI violation for a total of $5,000.

**C. Attorney's Fees**

Plaintiffs seek an award of attorney's fees and costs for all their claims under the Copyright Act. The Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. An award of attorney's fees is discretionary. *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533 (1994). In *Fogerty*, the Supreme Court laid out several nonexclusive factors that courts should consider in making fee awards in copyright cases including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535 n.19. When analyzing fee requests, courts should give substantial weight to the objective reasonableness of the losing party's position. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 200 (2016). Plaintiffs argue that a fee and cost award is appropriate here because their claims are "plainly accurate and uncontroverted," and because defendants failed to litigate this case. Dkt. No. 44-1 at 18 ¶¶ 18–20.

The Court finds plaintiffs are entitled to an award of reasonable attorney's fees and costs because they are the prevailing party and because defendants' position is objectively unreasonable for having failed to litigate this case. In addition, an award of attorney's fees and costs will serve the goal of deterring similar misconduct, particularly given defendants' apparent practice of evading copyright obligations by failing to defend themselves.

To determine the amount of the fee award, the Court must first determine a reasonable "lodestar" fee, multiplying the hours reasonably worked by a reasonable hourly rate. *See McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999) (per curiam). Then, the Court may

[2] The screenshots of the videos Jayjack refers to are attached as Exhibit 4 to the FAC.

adjust the lodestar to ensure a reasonable fee award. *See Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir. 2016).

Plaintiffs' counsel has submitted an invoice showing the hours he and his paralegal worked on this case.[3] *See* Dkt. No. 44-9. Plaintiff has requested $12,520.00 in attorney's fees and $1,245.16 in costs. *See* Dkt. No. 44-7 ¶¶ 5, 6. This represents 20.30 hours of plaintiffs' attorney's compensable time at an hourly rate of $450—$9,135—and 11.60 hours of his paralegal's time at an hourly rate of $300—$3,480. *Id.* ¶¶ 9, 10. Plaintiffs' counsel is a fifth-year associate at a Los Angeles based IP firm. *Id.* ¶ 12. His paralegal has eight years of experience. *Id.* ¶ 13. Plaintiffs have also submitted an invoice showing the costs incurred in bringing this case. *See* Dkt. No. 44-9. Those costs are: $81.89 for courtesy copies; $539 for translation of exhibits; $151.93 for disbursement to Saddleback Attorney Services; $67.34 for translation of summons, amended complaint, and Hague service form; and $405 for the court filing fee. *Id.*

In *Viral DRM LLC v. Lietucheva*, No. 3:23-cv-04300-JSC (N.D. Cal. Mar. 14, 2025)—a case in this district which involved the same plaintiff's counsel—Judge Corley stated that: "[e]ach successive filing raises more questions than it answers. It is impossible to tell whether this is sloppiness or something nefarious, but the Court has expended tremendous resources trying to figure it out . . . [and] each response only muddies the record." *Id.* at Dkt. No. 113 at 7. This is an apt description of the instant case, as plaintiffs' filings contain numerous errors and in some instances are missing critical documentation (such as copyright registration certificates). As a result, this Court has been forced to expend considerable resources trying to understand plaintiffs' filings, including what precisely each plaintiff seeks and based on what supporting evidence. Therefore, the Court finds it appropriate to reduce the attorney's fees award to $10,000. The Court will award costs in full.

United States District Court
Northern District of California

---

[3] The declaration from plaintiffs' counsel Matthew Rollin has the wrong plaintiffs and defendants listed in paragraph 1; nevertheless, the fee log attached to the Rollin declaration corresponds to the work performed on this case. *See* Dkt. No. 44-7 ¶ 1 & Ex. 2.

United States District Court
Northern District of California

### D. Permanent Injunction

Plaintiffs seek a permanent injunction to prevent defendants from "a. Advertising, marketing, promoting, selling, reproducing, manufacturing, or offering for sale any goods or services bearing or containing Plaintiff's copyrighted videos. b. Engaging in any activity that infringes on Plaintiff's copyrighted videos. c. Making, displaying, distributing, or retaining a physical or electronic form of Plaintiff's copyrighted videos." Dkt. No. 44-12 ¶ 12.

In a copyright infringement action, a court may grant an injunction to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The general rule is that a permanent injunction will be granted when liability is established and there is a threat of continuing violations. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

Here, defendants' past behavior and ongoing ability to infringe plaintiffs' copyrights constitute a threat of future infringing activity. Defendants possess the means for future infringement, as they still operate their YouTube channel and are easily able to download plaintiffs' copyrighted works and upload them as defendants' own. Furthermore, defendants' lack of participation in this litigation provides no assurance that their infringing activity will cease. For the foregoing reasons, the Court grants permanent injunctive relief as stated below.

### E. Post-Judgment Interest

Plaintiffs seek post-judgment interest on the total damages award, including on the attorney's fees and costs. 28 U.S.C. § 1961 sets the standard for post-judgment interest in all federal civil cases and provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Section 1961 sets post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" which is "computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." 28 U.S.C. § 1961(a)-(b).

The Court awards post-judgment interest at the legal rate on the entire judgment from the date of the judgment to the date of satisfaction pursuant to 28 U.S.C. § 1961.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court GRANTS plaintiffs' motion for default judgment IN PART. The Court DECLINES to enter default judgment as to plaintiffs Viral DRM and Nicholas Gorman, as they both lack standing—they have not provided proof of copyright registration or ownership. The Court also DECLINES to enter default judgment as to plaintiffs Michael Brandon Clement and Jonathan Petramala's claims for the works titled: "01-09-24 Marianna, Florida – First Light Tornado Damage" and "08-30-2023 Hurricane Idalia – Crystal River, Steinhatchie, Tampa, and St. Petersburg, Florida YT," as the copyright registration certificates indicate these copyrights have been assigned to a third party.

On the copyright infringement claims, the Court GRANTS the motion as follows: Ronald Brian Emfinger is awarded $2,500 in actual damages; Aaron Jayjack is awarded $3,000 in statutory damages; Frederick McKinney is awarded $9,000 in statutory damages; and Michael Brandon Clement is awarded $20,000 in statutory damages.

On the removal and falsification of CMI claims, the Court awards $10,000 in statutory damages to Michael Brandon Clement and awards Aaron Jayjack $5,000 in statutory damages.

The Court awards plaintiffs $10,000 in attorney's fees and $1,245.16 in costs.

The Court awards post-judgment interest at the legal rate on the entire judgment from the date of the judgment to the date of satisfaction pursuant to 28 U.S.C. § 1961.

The Court enters a permanent injunction as follows:

**PERMANENT INJUNCTION**

Defendants ANA NAVARRO and EL HERALDO DE MEXICO, their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them, who receive actual notice by personal service or otherwise ARE HEREBY PERMANENTLY RESTRAINED AND ENJOINED from:

a. Advertising, marketing, promoting, selling, reproducing, manufacturing, or offering for sale any goods or services bearing or containing the following copyrighted videos.

b. Engaging in any activity that infringes on the following copyrighted videos.

c. Making, displaying, distributing, or retaining a physical or electronic form of the following copyrighted videos.

This permanent injunction applies to the following works, for which the Court has determined the plaintiffs have standing to sue for copyright infringement:

(1) “06-15-2023-Perryton-TX-Major tornado and damage tornado drone plus resident begin cleanup” — Copyright Registration Number: PA 2-495-765

(2) “MAJOR Hurricane Idalia Makes Landfall Near Perry, Florida Shredding Trees and Buildings” — Copyright Registration Number: PA 2-447-682

(3) “The Hawley, Texas Tornado Rescue” — Copyright Registration Number: PA 2-479-373

(4) “11-19-22 New York Lake Effect Snow” — Copyright Registration Number: PA 2-401-314

(5) “11-18-22 Lackawanna, NY-Firefighters shoveling to save patient, cars stuck, interstate closed.” — Copyright Registration Number: PA 2-397-322.

This is a FINAL JUDGEMENT for which execution shall issue. The Court denies all relief not granted in this judgment.

**IT IS SO ORDERED AND ADJUDGED.**

Dated: October 20, 2026

Susan Illston

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California